(Slip Opinion) OCTOBER TERM, 2017 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SAS INSTITUTE INC. *v.* IANCU, DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 16–969.   Argued November 27, 2017—Decided April 24, 2018

Inter partes review allows private parties to challenge previously issued patent claims in an adversarial process before the Patent Office. At the outset, a party must file a petition to institute review, 35 U. S. C. §311(a), that identifies the challenged claims and the grounds for challenge with particularity, §312(a)(3). The patent owner, in turn, may file a response. §313. If the Director of the Patent Office determines "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," §314(a), he decides "whether to institute . . . review . . . pursuant to [the] petition," §314(b). "If . . . review is instituted and not dismissed," at the end of the litigation the Patent Trial and Appeal Board "shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner." §318(a).

Petitioner SAS sought review of respondent ComplementSoft's software patent, alleging that all 16 of the patent's claims were unpatentable. Relying on a Patent Office regulation recognizing a power of "partial institution," 37 CFR §42.108(a), the Director instituted review on some of the claims and denied review on the rest. The Board's final decision addressed only the claims on which the Director had instituted review. On appeal, the Federal Circuit rejected SAS's argument that §318(a) required the Board to decide the patentability of every claim challenged in the petition.

*Held*: When the Patent Office institutes an inter partes review, it must decide the patentability of all of the claims the petitioner has challenged. The plain text of §318(a) resolves this case. Its directive is both mandatory and comprehensive. The word "shall" generally imposes a nondiscretionary duty, and the word "any" ordinarily implies

every member of a group.  Thus, §318(a) means that the Board *must* address *every* claim the petitioner has challenged.  The Director's "partial institution" power appears nowhere in the statutory text. And both text and context strongly counsel against inferring such a power.

The statute envisions an inter partes review guided by the initial petition.  See §312(a)(3).  Congress structured the process such that the petitioner, not the Director, defines the proceeding's contours. The ex parte reexamination statute shows that Congress knew exactly how to authorize the Director to investigate patentability questions "[o]n his own initiative, and at any time," §303(a).  The inter partes review statute indicates that the Director's decision "whether" to institute review "pursuant to [the] petition" is a yes-or-no choice. §314(b).

Section 314(a)'s requirement that the Director find "a reasonable likelihood" that the petitioner will prevail on "at least 1 of the claims challenged in the petition" suggests, if anything, a regime where a reasonable prospect of success on a single claim justifies review of them all.  Again, if Congress had wanted to adopt the Director's claim-by-claim approach, it knew how to do so.  See §304.  Nor does it follow that, because §314(a) invests the Director with discretion on the question *whether* to institute review, it also invests him with discretion regarding *what* claims that review will encompass.  The rest of the statute confirms, too, that the petitioner's petition, not the Director's discretion, should guide the life of the litigation.  See, *e.g.*, §316(a)(8).

The Director suggests that a textual discrepancy between §314(a)— which addresses whether to institute review based on claims found "in the petition"—and §318(a)—which addresses the Board's final resolution of the claims challenged "by the petitioner"—means that the Director enjoys the power to institute a review covering fewer than all of the claims challenged in the petition.  However, the statute's winnowing mechanism—which allows a patent owner to concede one part of a petitioner's challenge and "[c]ancel any challenged patent claim," §316(d)(1)(A)—fully explains why Congress adopted the slightly different language.

The Director's policy argument—that partial institution is efficient because it permits the Board to focus on the most promising challenges and avoid spending time and resources on others—is properly addressed to Congress, not this Court.  And the Director's asserted "partial institution" power, which is wholly unmentioned in the statute, is not entitled to deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837.  Finally, notwithstanding §314(d)—which makes the Director's determination

Syllabus

whether to institute an inter partes review "final and nonappealable"—judicial review remains available consistent with the Administrative Procedure Act to ensure that the Patent Office does not exceed its statutory bounds. *Cuozzo Speed Technologies, LLC* v. *Lee*, 579 U. S. \_\_\_, distinguished. Pp. 4–14.

825 F. 3d 1341, reversed and remanded.

GORSUCH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, and ALITO, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which BREYER, SOTOMAYOR, and KAGAN, JJ., joined. BREYER, J., filed a dissenting opinion, in which GINSBURG and SOTOMAYOR, JJ., joined, and in which KAGAN, J., joined except as to Part III–A.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 16–969

SAS INSTITUTE INC., PETITIONER *v.* ANDREI IANCU, AS DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 24, 2018]

JUSTICE GORSUCH delivered the opinion of the Court.

A few years ago Congress created "inter partes review." The new procedure allows private parties to challenge previously issued patent claims in an adversarial process before the Patent Office that mimics civil litigation. Recently, the Court upheld the inter partes review statute against a constitutional challenge. *Oil States Energy Services, LLC* v. *Greene's Energy Group, LLC, ante,* p. ___. Now we take up a question concerning the statute's operation. When the Patent Office initiates an inter partes review, must it resolve *all* of the claims in the case, or may it choose to limit its review to only *some* of them? The statute, we find, supplies a clear answer: the Patent Office must "issue a final written decision with respect to the patentability of *any* patent claim challenged by the petitioner." 35 U. S. C. §318(a) (emphasis added). In this context, as in so many others, "any" means "every." The agency cannot curate the claims at issue but must decide them all.

"To promote the Progress of Science and useful Arts,"

Congress long ago created a patent system granting inventors rights over the manufacture, sale, and use of their inventions. U. S. Const., Art. I, §8, cl. 8; see 35 U. S. C. §154(a)(1). To win a patent, an applicant must (among other things) file "claims" that describe the invention and establish to the satisfaction of the Patent Office the invention's novelty and nonobviousness. See §§102, 103, 112(b), 131; *Cuozzo Speed Technologies, LLC* v. *Lee*, 579 U. S. ___, ___–___ (2016) (slip op., at 2–3).

Sometimes, though, bad patents slip through. Maybe the invention wasn't novel, or maybe it was obvious all along, and the patent owner shouldn't enjoy the special privileges it has received. To remedy these sorts of problems, Congress has long permitted parties to challenge the validity of patent claims in federal court. See §§282(b)(2)–(3). More recently, Congress has supplemented litigation with various administrative remedies. The first of these was ex parte reexamination. Anyone, including the Director of the Patent Office, can seek ex parte reexamination of a patent claim. §§302, 303(a). Once instituted, though, an ex parte reexamination follows essentially the same inquisitorial process between patent owner and examiner as the initial Patent Office examination. §305. Later, Congress supplemented ex parte reexamination with inter partes reexamination. Inter partes reexamination (since repealed) provided a slightly more adversarial process, allowing a third party challenger to submit comments throughout the proceeding. §314(b)(2) (2006 ed.) (repealed). But otherwise it too followed a more or less inquisitorial course led by the Patent Office. §314(a). Apparently unsatisfied with this approach, in 2011 Congress repealed inter partes reexamination and replaced it with inter partes review. See 35 U. S. C. §§311–319 (2012 ed.).

The new inter partes review regime looks a good deal more like civil litigation. At its outset, a party must file "a petition to institute an inter partes review of [a] patent."

§311(a). The petition "may request to cancel as unpatent-
able 1 or more claims of [the] patent" on the ground that
the claims are obvious or not novel. §311(b); see §§102
and 103. In doing so, the petition must identify "each
claim challenged," the grounds for the challenge, and the
evidence supporting the challenge. §312(a)(3). The patent
owner, in turn, may respond with "a preliminary response
to the petition" explaining "why no inter partes review
should be instituted." §313. With the parties' submissions
before him, the Director then decides "whether to institute
an inter partes review . . . pursuant to [the] petition."
§314(b). (In practice, the agency's Patent Trial and Appeal
Board exercises this authority on behalf of the Director,
see 37 CFR §42.4(a) (2017).) Before instituting review, the
Director must determine, based on the parties' papers,
"that there is a reasonable likelihood that the petitioner
would prevail with respect to at least 1 of the claims chal-
lenged in the petition." 35 U. S. C. §314(a).

Once the Director institutes an inter partes review, the
matter proceeds before the Board with many of the usual
trappings of litigation. The parties conduct discovery and
join issue in briefing and at an oral hearing. §§316(a)(5),
(6), (8), (10), (13). During the course of the case, the pa-
tent owner may seek to amend its patent or to cancel one
or more of its claims. §316(d). The parties may also settle
their differences and seek to end the review. §317. But
"[i]f an inter partes review is instituted and not dis-
missed," at the end of the litigation the Board "shall issue
a final written decision with respect to the patentability of
any patent claim challenged by the petitioner." §318(a).

Our case arose when SAS sought an inter partes review
of ComplementSoft's software patent. In its petition, SAS
alleged that all 16 of the patent's claims were unpatent-
able for various reasons. The Director (in truth the Board
acting on the Director's behalf) concluded that SAS was
likely to succeed with respect to at least one of the claims

and that an inter partes review was therefore warranted. But instead of instituting review on all of the claims challenged in the petition, the Director instituted review on only some (claims 1 and 3–10) and denied review on the rest. The Director did all this on the strength of a Patent Office regulation that purported to recognize a power of "partial institution," claiming that "[w]hen instituting *inter partes* review, the [Director] may authorize the review to proceed on all or some of the challenged claims and on all or some or the grounds of unpatentability asserted for each claim." 37 CFR §42.108(a). At the end of litigation, the Board issued a final written decision finding claims 1, 3, and 5–10 to be unpatentable while upholding claim 4. But the Board's decision did not address the remaining claims on which the Director had refused review.

That last fact led SAS to seek review in the Federal Circuit. There SAS argued that 35 U. S. C. §318(a) required the Board to decide the patentability of *every* claim SAS challenged in its petition, not just some. For its part, the Federal Circuit rejected SAS's argument over a vigorous dissent by Judge Newman. *SAS Institute, Inc.* v. *ComplementSoft, LLC*, 825 F. 3d 1341 (2016). We granted certiorari to decide the question ourselves. 581 U. S. ___ (2017).

We find that the plain text of §318(a) supplies a ready answer. It directs that "[i]f an inter partes review is instituted and not dismissed under this chapter, the [Board] *shall issue* a final written decision with respect to the patentability of *any patent claim challenged by the petitioner* . . . ." §318(a) (emphasis added). This directive is both mandatory and comprehensive. The word "shall" generally imposes a nondiscretionary duty. See *Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach*, 523 U. S. 26, 35 (1998). And the word "any" naturally carries "an expansive meaning." *United States* v. *Gonzales*, 520 U. S.

1, 5 (1997). When used (as here) with a "singular noun in affirmative contexts," the word "any" ordinarily "refer[s] to a member of a particular group or class without distinction or limitation" and in this way "impl[ies] *every* member of the class or group." Oxford English Dictionary (3d ed., Mar. 2016), www.oed.com/view/Entry/8973 (OED) (emphasis added) (all Internet materials as last visited Apr. 20, 2018). So when §318(a) says the Board's final written decision "shall" resolve the patentability of "any patent claim challenged by the petitioner," it means the Board *must* address *every* claim the petitioner has challenged.

That would seem to make this an easy case. Where a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer. *Social Security Bd.* v. *Nierotko*, 327 U. S. 358, 369 (1946). Because SAS challenged all 16 claims of ComplementSoft's patent, the Board in its final written decision had to address the patentability of all 16 claims. Much as in the civil litigation system it mimics, in an inter partes review the petitioner is master of its complaint and normally entitled to judgment on all of the claims it raises, not just those the decisionmaker might wish to address.

The Director replies that things are not quite as simple as they seem. Maybe the Board has to decide every claim challenged by the petitioner in an inter partes review. But, he says, that doesn't mean every challenged claim gains admission to the review process. In the Director's view, he retains discretion to decide which claims make it into an inter partes review and which don't. The trouble is, nothing in the statute says anything like that. The Director's claimed "partial institution" power appears nowhere in the text of §318, or anywhere else in the statute for that matter. And what can be found in the statutory text and context strongly counsels against the Director's view.

Start where the statute does. In its very first provision, the statute says that a party may seek inter partes review by filing "a petition to institute an inter partes review." §311(a). This language doesn't authorize the Director to start proceedings on his own initiative. Nor does it contemplate a petition that asks the Director to initiate whatever kind of inter partes review he might choose. Instead, the statute envisions that a petitioner will seek an inter partes review of a particular kind—one guided by a petition describing "each claim challenged" and "the grounds on which the challenge to each claim is based." §312(a)(3). From the outset, we see that Congress chose to structure a process in which it's the petitioner, not the Director, who gets to define the contours of the proceeding. And "[j]ust as Congress' choice of words is presumed to be deliberate" and deserving of judicial respect, "so too are its structural choices." *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. 338, 353 (2013).

It's telling, too, to compare this structure with what came before. In the ex parte reexamination statute, Congress embraced an inquisitorial approach, authorizing the Director to investigate a question of patentability "[o]n his own initiative, and at any time." §303(a). If Congress had wanted to give the Director similar authority over the institution of inter partes review, it knew exactly how to do so—it could have simply borrowed from the statute next door. But rather than create (another) agency-led, inquisitorial process for reconsidering patents, Congress opted for a party-directed, adversarial process. Congress's choice to depart from the model of a closely related statute is a choice neither we nor the agency may disregard. See *Nassar*, *supra*, at 353–354.

More confirmation comes as we move to the point of institution. Here the statute says the Director must decide "whether to institute an inter partes review . . . pursuant to a petition." §314(b). The Director, we see, is

given only the choice "whether" to institute an inter partes review. That language indicates a binary choice—either institute review or don't. And by using the term "pursuant to," Congress told the Director what he must say yes or no to: an inter partes review that proceeds "[i]n accordance with" or "in conformance to" the petition. OED, www.oed.com/view/Entry/155073. Nothing suggests the Director enjoys a license to depart from the petition and institute a *different* inter partes review of his own design.

To this the Director replies by pointing to another part of §314. Section 314(a) provides that the Director may not authorize an inter partes review unless he determines "there is a reasonable likelihood" the petitioner will prevail on "at least 1 of the claims challenged in the petition." The Director argues that this language requires him to "evaluate claims individually" and so must allow him to institute review on a claim-by-claim basis as well. Brief for Federal Respondent 28. But this language, if anything, suggests just the opposite. Section 314(a) does not require the Director to evaluate every claim individually. Instead, it simply requires him to decide whether the petitioner is likely to succeed on "at least 1" claim. Once that single claim threshold is satisfied, it doesn't matter whether the petitioner is likely to prevail on any *additional* claims; the Director need not even consider any other claim before instituting review. Rather than contemplate claim-by-claim institution, then, the language anticipates a regime where a reasonable prospect of success on a single claim justifies review of all.

Here again we know that if Congress wanted to adopt the Director's approach it knew exactly how to do so. The ex parte reexamination statute allows the Director to assess whether a request raises "a substantial new question of patentability affecting any claim" and (if so) to institute reexamination limited to "resolution of *the question*." §304 (emphasis added). In other words, that stat-

ute allows the Director to institute proceedings on a claim-by-claim and ground-by-ground basis. But Congress didn't choose to pursue that known and readily available approach here. And its choice to try something new must be given effect rather than disregarded in favor of the comfort of what came before. See *Nassar*, *supra*, at 353–354.

Faced with this difficulty, the Director tries another tack. He points to the fact that §314(a) doesn't *require* him to institute an inter partes review even after he finds the "reasonable likelihood" threshold met with respect to one claim. Whether to institute proceedings upon such a finding, he says, remains a matter left to his discretion. See *Cuozzo*, 579 U. S., at ___ (slip op., at 9). But while §314(a) invests the Director with discretion on the question *whether* to institute review, it doesn't follow that the statute affords him discretion regarding *what* claims that review will encompass. The text says only that the Director can decide "whether" to institute the requested review—not "whether *and to what extent*" review should proceed. §314(b).

The rest of the statute confirms, too, that the petitioner's petition, not the Director's discretion, is supposed to guide the life of the litigation. For example, §316(a)(8) tells the Director to adopt regulations ensuring that, "after an inter partes review has been instituted," the patent owner will file "a response to the petition." Surely it would have made little sense for Congress to insist on a response *to the petition* if, in truth, the Director enjoyed the discretion to limit the claims under review. What's the point, after all, of answering claims that aren't in the proceeding? If Congress had meant to afford the Director the power he asserts, we would have expected it to instruct him to adopt regulations requiring the patent owner to file a response *to the Director's institution notice* or *to the claims on which the Director instituted review*. Yet we have nothing like that here. And then and again there is

§318(a). At the end of the proceeding, §318(a) categorically commands the Board to address in its final written decision "any patent claim challenged by the petitioner." In all these ways, the statute tells us that the petitioner's contentions, not the Director's discretion, define the scope of the litigation all the way from institution through to conclusion.

The Director says we can find at least some hint of the discretion he seeks by comparing §314(a) and §318(a). He notes that, when addressing whether to institute review at the beginning of the litigation, §314(a) says he must focus on the claims found "in the petition"; but when addressing what claims the Board must address at the end of the litigation, §318(a) says it must resolve the claims challenged "by the petitioner." According to the Director, this (slight) linguistic discrepancy means the claims the Board must address in its final decision are not necessarily the same as those identified in the petition. And the only possible explanation for this arrangement, the Director submits, is that he must enjoy the (admittedly implicit) power to institute an inter partes review that covers fewer than all of the claims challenged in the petition.

We just don't see it. Whatever differences they might display, §314(a) and §318(a) both focus on the *petitioner's* contentions and, given that, it's difficult to see how they might be read to give the *Director* power to decide what claims are at issue. Particularly when there's a much simpler and sounder explanation for the statute's wording. As we've seen, a patent owner may move to "[c]ancel any challenged patent claim" during the course of an inter partes review, effectively conceding one part of a petitioner's challenge. §316(d)(1)(A). Naturally, then, the claims challenged "in the petition" will not always survive to the end of the case; some may drop out thanks to the patent owner's actions. And in that light it is plain enough why Congress provided that only claims still challenged "by the

petitioner" at the litigation's end must be addressed in the Board's final written decision. The statute's own winnowing mechanism fully explains why Congress adopted slightly different language in §314(a) and §318(a). We need not and will not invent an atextual explanation for Congress's drafting choices when the statute's own terms supply an answer. See *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 240–241 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute").

Moving past the statute's text and context, the Director attempts a policy argument. He tells us that partial institution is efficient because it permits the Board to focus on the most promising challenges and avoid spending time and resources on others. Brief for Federal Respondent 35–36; see also *post,* at 1 (GINSBURG, J., dissenting); *post,* at 7–8 (BREYER, J., dissenting). SAS responds that all patent challenges usually end up being litigated *somewhere*, and that partial institution creates inefficiency by requiring the parties to litigate in two places instead of one—the Board for claims the Director chooses to entertain and a federal court for claims he refuses. Indeed, SAS notes, the government itself once took the same view, arguing that partial institution "'undermine[s] the Congressional efficiency goal'" for this very reason. Brief for Petitioner 30. Each side offers plausible reasons why its approach might make for the more efficient policy. But who should win that debate isn't our call to make. Policy arguments are properly addressed to Congress, not this Court. It is Congress's job to enact policy and it is this Court's job to follow the policy Congress has prescribed. And whatever its virtues or vices, Congress's prescribed policy here is clear: the petitioner in an inter partes review is entitled to

a decision on all the claims it has challenged.*

That leaves the Director to suggest that, however this Court might read the statute, he should win anyway because of *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). Even though the statute says nothing about his asserted "partial institution" power, the Director says the statute is at least ambiguous on the propriety of the practice and so we should leave the matter to his judgment. For its part, SAS replies that we might use this case as an opportunity to abandon *Chevron* and embrace the "'impressive body'" of pre-*Chevron* law recognizing that "'the meaning of a statutory term'" is properly a matter for "'judicial [rather than] administrative judgment.'" Brief for Petitioner 41 (quoting *Pittston Stevedoring Corp.* v. *Dellaventura*, 544 F. 2d 35, 49 (CA2 1976) (Friendly, J.)).

But whether *Chevron* should remain is a question we may leave for another day. Even under *Chevron*, we owe an agency's interpretation of the law no deference unless, after "employing traditional tools of statutory construction," we find ourselves unable to discern Congress's

——————

*JUSTICE GINSBURG suggests the Director might yet avoid this command by refusing to review a petition he thinks too broad while signaling his willingness to entertain one more tailored to his sympathies. *Post,* at 1 (dissenting opinion). We have no occasion today to consider whether this stratagem is consistent with the statute's demands. See *Cuozzo Speed Technologies, LLC* v. *Lee*, 579 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 11) (noting that courts may invalidate "'shenanigans'" by the Director that are "outside [his] statutory limits"); *CAB* v. *Delta Air Lines, Inc.*, 367 U. S. 316, 328 (1961) (questioning an agency's "power to do indirectly what it cannot do directly"). But even assuming (without granting) the law would tolerate this tactic, it would show only that a lawful means exists for the Director to achieve his policy aims—not that he "should be allowed to improvise on the powers granted by Congress" by devising an extralegal path to the same goal. *Id.*, at 330. That an agency's improvisation might be thought by some more expedient than what the law allows, *post,* at 1, does nothing to commend it either, for lawful ends do not justify unlawful means.

meaning.  467 U. S., at 843, n. 9.  And after applying traditional tools of interpretation here, we are left with no uncertainty that could warrant deference.  The statutory provisions before us deliver unmistakable commands.  The statute hinges inter partes review on the filing of a petition challenging specific patent claims; it makes the petition the centerpiece of the proceeding both before and after institution; and it requires the Board's final written decision to address every claim the petitioner presents for review.  There is no room in this scheme for a wholly unmentioned "partial institution" power that lets the Director select only some challenged claims for decision.  The Director may (today) think his approach makes for better policy, but policy considerations cannot create an ambiguity when the words on the page are clear.  See *SEC* v. *Sloan*, 436 U. S. 103, 116–117 (1978).  Neither may we defer to an agency official's preferences because we imagine some "hypothetical reasonable legislator" would have favored that approach.  *Post,* at 9 (BREYER, J., dissenting).  Our duty is to give effect to the text that 535 *actual* legislators (plus one President) enacted into law.

At this point, only one final question remains to resolve.  Even if the statute forbids his partial institution practice, the Director suggests we lack the power to say so.  By way of support, he points to §314(d) and our decision in *Cuozzo*, 579 U. S. ___.  Section 314(d) says that the "determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."  In *Cuozzo*, we held that this provision prevented courts from entertaining an argument that the Director erred in instituting an inter partes review of certain patent claims.  *Id.*, at ___–___ (slip op., at 7–12).  The Director reads these authorities as foreclosing judicial review of any legal question bearing on the institution of inter partes review—including whether the statute permits his "partial institution" practice.

But this reading overreads both the statute and our precedent. As *Cuozzo* recognized, we begin with "the 'strong presumption' in favor of judicial review." *Id.*, at \_\_\_ (slip op., at 9). To overcome that presumption, *Cuozzo* explained, this Court's precedents require "clear and convincing indications" that Congress meant to foreclose review. *Id.,* at \_\_\_ (slip op., at 10) (internal quotation marks omitted). Given the strength of this presumption and the statute's text, *Cuozzo* concluded that §314(d) precludes judicial review only of the Director's "initial determination" under §314(a) that "there is a 'reasonable likelihood' that the claims are unpatentable on the grounds asserted" and review is therefore justified. *Id.*, at \_\_\_ (slip op., at 9); see *id.*, at \_\_\_ (slip op., at 12) (review unavailable "where a patent holder merely challenges the Patent Office's 'determin[ation] that the information presented in the petition . . . shows that there is a reasonable likelihood' of success 'with respect to at least 1 of the claims challenged'"); *ibid.* (claim that a "petition was not pleaded 'with particularity' under §312 is little more than a challenge to the Patent Office's conclusion, under §314(a), that the 'information presented in the petition' warranted review"). In fact, *Cuozzo* proceeded to emphasize that §314(d) does not "enable the agency to act outside its statutory limits." *Id.*, at \_\_\_ (slip op., at 11). If a party believes the Patent Office has engaged in "'shenanigans'" by exceeding its statutory bounds, judicial review remains available consistent with the Administrative Procedure Act, which directs courts to set aside agency action "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." *Ibid.*; 5 U. S. C. §§706(2)(A), (C).

And that, of course, is exactly the sort of question we are called upon to decide today. SAS does not seek to challenge the Director's conclusion that it showed a "reasonable likelihood" of success sufficient to warrant "insti-

tut[ing] an inter partes review."  35 U. S. C. §§314(a), (d). No doubt SAS remains very pleased with the Director's judgment on that score.  Instead, SAS contends that the Director exceeded his statutory authority by limiting the review to fewer than all of the claims SAS challenged. And nothing in §314(d) or *Cuozzo* withdraws our power to ensure that an inter partes review proceeds in accordance with the law's demands.

Because everything in the statute before us confirms that SAS is entitled to a final written decision addressing all of the claims it has challenged and nothing suggests we lack the power to say so, the judgment of the Federal Circuit is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–969

_____

SAS INSTITUTE INC., PETITIONER *v.* ANDREI IANCU,
AS DIRECTOR, UNITED STATES PATENT
AND TRADEMARK OFFICE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[April 24, 2018]

JUSTICE GINSBURG, with whom JUSTICE BREYER,
JUSTICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting.

Given the Court's wooden reading of 35 U. S. C. §318(a),
and with "no mandate to institute [inter partes] review" at
all, *Cuozzo Speed Technologies, LLC* v. *Lee*, 579 U. S. \_\_\_,
\_\_\_ (2016) (slip op., at 9), the Patent Trial and Appeal
Board could simply deny a petition containing challenges
having no "reasonable likelihood" of success, §314(a).
Simultaneously, the Board might note that one or more
specified claims warrant reexamination, while others
challenged in the petition do not. Petitioners would then
be free to file new or amended petitions shorn of challenges
the Board finds unworthy of inter partes review. Why
should the statute be read to preclude the Board's more
rational way to weed out insubstantial challenges? For
the reasons stated by JUSTICE BREYER, the Court's opinion
offers no persuasive answer to that question, and no cause
to believe Congress wanted the Board to spend its time so
uselessly.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–969

_____

## SAS INSTITUTE INC., PETITIONER *v.* ANDREI IANCU, AS DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 24, 2018]

JUSTICE BREYER, with whom JUSTICE GINSBURG and JUSTICE SOTOMAYOR join, and with whom JUSTICE KAGAN joins except as to Part III–A, dissenting.

This case requires us to engage in a typical judicial exercise, construing a statute that is technical, unclear, and constitutes a minor procedural part of a larger administrative scheme. I would follow an interpretive technique that judges often use in such cases. Initially, using "traditional tools of statutory construction," *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 446 (1987), I would look to see whether the relevant statutory phrase is ambiguous or leaves a gap that Congress implicitly delegated authority to the agency to fill. *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843 (1984). If so, I would look to see whether the agency's interpretation is reasonable. *Id.,* at 843. Because I believe there is such a gap and because the Patent Office's interpretation of the ambiguous phrase is reasonable, I would conclude that the Patent Office's interpretation is lawful.

I

The majority sets out the statutory framework that establishes "inter partes review." See *ante,* at 2–3; 35

U. S. C. §§311–319.  An example will help the reader keep that framework in mind.  Suppose the Patent Office issues a patent containing, say, 16 different claims.  A challenger, believing the patent is invalid, seeks to invoke the inter partes review procedure.

The statutory chapter entitled "Inter partes review" explains just how this is to be done.  See §§311–319.  First, the challenger files a petition requesting "cancel[lation]" of one or more of the patent claims as "unpatentable" because "prior art" shows, for example, that they are not "novel."  §311(b); see §§102, 103.  That petition must detail the grounds for the challenge and the supporting evidence, along with providing certain technical information.  §312.  Second, the patent owner may file a "preliminary response" to the petition.  §313.

Third, the Director of the Patent Office will decide whether to "institute" inter partes review.  §314.  The statute specifies that the Director "may not authorize an inter partes review to be instituted unless the Director determines . . . that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  §314(a).  Thus, in my example, if the Director determines that none of the 16 challenges in the petition has likely merit, he cannot institute an inter partes review.  Even if there is one potentially meritorious challenge, we have said that the statute contains "no mandate to institute review," so the Director still has discretion to deny a petition.  *Cuozzo Speed Technologies, LLC* v. *Lee*, 579 U. S. ___, ___ (2016) (slip op., at 9).  We have also held that the Director's decision whether to institute review is normally not reviewable.  *Id.,* at ___–___ (slip op., at 11–12).

The Director, by regulation, has delegated the power to institute review to the Patent Trial and Appeal Board.  37 CFR §42.4(a) (2017).  And the Director has further provided by regulation that where a petition challenges several

patent claims (say, all 16 claims in my example), "the Board may authorize the review to proceed on all *or some* of the challenged claims." §42.108(a) (emphasis added). Thus, where some, but not all, of the challenges have likely merit (say, 1 of the 16 has likely merit and the others are close to frivolous), the Board is free to conduct inter partes review only as to the challenge with likely merit.

Fourth, the statute next describes the relation of a petition for review and an instituted review to other proceedings involving the challenged patent. §315. Fifth, the statute describes what happens once the Board begins its inter partes review, including how the Board is to take evidence and make its decisions, §316, and the nature and effect of settlements, §317.

Sixth, the statute sets forth the section primarily at issue here, which describes what happens at the end of the process. It says:

> "Final Written Decision. If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of *any patent claim challenged by the petitioner* and any new claim added under section 316(d)." §318(a) (emphasis added).

Finally, the chapter says that a "party dissatisfied with the final written decision . . . may appeal the decision" to the U. S. Court of Appeals for the Federal Circuit. §319; see §141(c).

Thus, going through this process, if a petitioner files a petition challenging 16 claims and the Board finds that the challenges to 15 of the claims are frivolous, the Board may then, as it interprets the statute, begin and proceed through the inter partes review process as to the remaining claim, number 16, but not in respect to the other 15

claims. Eventually the Board will produce a "final written decision" as to the patentability of claim number 16, which decision the challenger (or the patentee) can appeal to the Federal Circuit.

## II

Now let us return to the question at hand, the meaning of the phrase "any patent claim challenged by the petitioner" in §318(a). Do those words unambiguously refer, as the majority believes, to "any patent claim challenged by the petitioner" *in the petitioner's original petition*? The words "in the petitioner's original petition" do not appear in the statute. And the words that do appear, "any patent claim challenged by the petitioner," could be modified by using different words that similarly do not appear, for example, the words "in the inter partes review proceeding." But without added words, the phrase "challenged by the petitioner" does not tell us whether the relevant challenge is one made in the initial petition or only one made in the inter partes review proceeding itself. And, linguistically speaking, there is as much reason to fill that gap with reference to the claims still being challenged in the proceeding itself as there is to fill it with reference to claims that were initially challenged in the petition but which the Board weeded out before the inter partes review proceeding began.

Which reading we give the statute makes a difference. The first reading, the majority's reading, means that in my example, the Board must consider and write a final, and *appealable*, see §319, decision in respect to the challenges to all 16 claims, including the 15 frivolous challenges. The second reading requires the Board to write a final, appealable decision only in respect to the challenge to the claim (number 16 in my example) that survived the Board's initial screening, namely, in my example, the one challenge in respect to which the Board found a "reason-

able likelihood that the petitioner would prevail." §314(a).

I cannot find much in the statutory context to support the majority's claim that the statutory words "claim challenged by the petitioner" refer unambiguously to claims challenged initially in the petition. After all, the majority agrees that they do not refer to claims that initially were challenged in the petition but were later settled or withdrawn. *Ante*, at 9–10; see §316(d)(1)(A) (allowing the patent owner to cancel a challenged patent claim during inter partes review); §317 (addressing settlement). The majority says that weeded-out challenges, unlike settled matters or canceled claims, involve claims that are still being "challenged 'by the petitioner' at the litigation's end." *Ante,* at 9–10. But weeded-out challenges are the same as settled matters and canceled claims in this respect. The petitioner cannot continue to challenge a claim once that challenge is weeded out by the Board at the institution phase. He cannot pursue it before the Board in the inter partes review, and normally he cannot pursue it in a court of appeals. See *Cuozzo*, 579 U. S., at \_\_\_–\_\_\_ (slip op., at 11–12). The petitioner might bring a totally separate case in court in which he challenges the claim, but that is a different matter that is not the subject of this statutory chapter.

Nor does the chapter's structure help fill the statutory gap. I concede that if we examine the "final written decision" section, §318(a), just after reading the three initial sections of the statute, §§311, 312, and 313, we may be tempted to believe that the words "any patent claim challenged" in §318(a) must refer to the claims challenged in the petition, just as the words "each claim challenged" in §312(a)(3) unmistakably do. But once we look at the whole statute, this temptation disappears. The first section, §311, describing the inter partes review process, does not use the word "challenge." The next section, §312, describes the requirements for the initial petition, which is

filed *before* any inter partes proceeding has been insti-
tuted. It is about the petition, so it is not surprising that it
refers to the claims challenged in the petition. The next
section, §313, concerns the preliminary response, which is
similarly filed before the inter partes review proceeding
has been instituted and is thus similarly focused on the
petition, although it does not use the word "challenged."

The very next section, however, §314, along with part of
§315, describes preliminary screening and the *institution*
of the inter partes review proceeding. The remainder of
§315, and the following sections, §§316 and 317, then
describe how that proceeding, once instituted, will be
conducted (and provide for settlements). Only then does
§318 appear. That statutory provision tells the Board
that, at the conclusion of the inter partes review proceed-
ing, it must "issue a final written decision with respect to
the patentability of any patent claim challenged by the
petitioner." §318(a). And in this context, a context about
the inter partes review proceeding itself, it is more than
reasonable to think that the phrase "patent claim chal-
lenged by the petitioner" refers to challenges made in the
proceeding, not challenges made in the petition but never
made a part of the proceeding.

I am not helped by examining, as the majority exam-
ines, what Congress might have done had it used other
language. *Ante,* at 6–8. The majority points out that had
Congress meant anything other than "challenged in the
petition," it might have said so more clearly. *Ibid.* But
similarly, if Congress had meant "challenged in the peti-
tion," it might have used the words "in the petition." After
all, it used those very words only four sections earlier. See
§314(a) (referring to "claims challenged in the petition").
This argument, like many such arguments, is a wash.

Neither am I helped by analogizing the inter partes
review proceeding to civil litigation. Cf. *ante,* at 2–3, 5.
That is because, as this Court said in *Cuozzo*, inter partes

review is a "hybrid proceeding." 579 U. S., at \_\_\_ (slip op., at 16). It has some adversarial characteristics, but "in other significant respects, inter partes review is less like a judicial proceeding and more like a specialized agency proceeding." *Id.,* at \_\_\_ (slip op., at 15). Its purposes are not limited to "helping resolve concrete patent-related disputes among parties," but extend to "reexamin[ing] . . . an earlier administrative grant of a patent" and "protect[ing] the public's 'paramount interest in seeing that patent monopolies . . . are kept within their legitimate scope.'" *Ibid.* (quoting *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.*, 324 U. S. 806, 816 (1945); ellipsis in original); see also *Oil States Energy Services, LLC* v. *Greene's Energy Group, LLC*, \_\_\_ U. S. \_\_\_, \_\_\_–\_\_\_ (2018) (slip op., at 8–9).

Finally, I would turn to the likely purposes of the statutory provision. As the majority points out, §314(a) makes clear that the "Director" (now his delegate, the Board) is to determine whether there is a "reasonable likelihood" of success as to at least one of the claims the petition challenges. If not, he cannot initiate an inter partes review proceeding. If so, §314(a) "invests the Director with discretion on the question whether to institute review." *Ante,* at 8 (emphasis deleted); *Cuozzo, supra,* at \_\_\_ (slip op., at 9). As I have said, Patent Office regulations allow the Board to proceed with inter partes review of some of the claims a petitioner challenges (say, only those where there is a reasonable likelihood of success), but not of others. 37 CFR §42.108(a).

The majority points out that it does not follow from §314(a) that the statute affords the Director discretion regarding *what claims that review will encompass*. The text says only that the Director can decide "whether" to institute the requested review, not "whether and to what extent" review should proceed. *Ante,* at 8 (emphasis deleted). That is certainly so. But I think that when we, as

judges, face a difficult text, it is often helpful to ask not just "whether" or "what" but also "why." Why, asks the Patent Office, would Congress have intended to require the Board to proceed with an inter partes review, take evidence, and hear argument in respect to challenges to claims that the Board had previously determined had no "reasonable likelihood" of success? The statute would seem to give the Director discretion to achieve the opposite, namely, to avoid wasting the Board's time and effort reviewing challenges that it has already decided have no "reasonable likelihood of success." In my example, why make the Board do further work on the challenges to claims 1 through 15, which the Board has already decided are near frivolous?

More than that, to read §318(a) as requiring a "final written decision" in respect to those 15 perhaps frivolous challenges would seem to lead to judicial review of the Board's decision about those frivolous challenges. After all, §319 of the statute says that a "party dissatisfied with the final written decision of the [Board] under section 318(a)," the provision before us, "may appeal the decision" to the Federal Circuit. And the majority's interpretation is anomalous in that it is difficult to imagine why Congress, with one hand, would make the agency's weeding-out decision nonreviewable, see *Cuozzo, supra,* at ___–___ (slip op., at 11–12), yet at the same time would make the decision reviewable via the requirement that the Board issue a "final written" appealable "decision" with respect to that weeded-out challenge.

## III

I end up where I began. Section 318(a) contains a gap just after the words "challenged by the petitioner." Considerations of context, structure, and purpose do not close the gap. And under *Chevron*, "where a statute leaves a 'gap' or is 'ambigu[ous],' we typically interpret it as grant-

ing the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute." *Cuozzo, supra,* at \_\_\_ (slip op., at 13) (quoting *United States* v. *Mead Corp.*, 533 U. S. 218, 229 (2001); alteration in original).

### A

In referring to *Chevron*, I do not mean that courts are to treat that case like a rigid, black-letter rule of law, instructing them always to allow agencies leeway to fill every gap in every statutory provision. See *Mead Corp., supra,* at 229–231. Rather, I understand *Chevron* as a rule of thumb, guiding courts in an effort to respect that leeway which Congress intended the agencies to have. I recognize that Congress does not always consider such matters, but if not, courts can often implement a more general, virtually omnipresent congressional purpose— namely, the creation of a well-functioning statutory scheme—by using a canon-like, judicially created construct, the hypothetical reasonable legislator, and asking what such legislators would likely have intended had Congress considered the question of delegating gap-filling authority to the agency.

### B

To answer this question, we have previously held that a "statute's complexity, the vast number of claims that it engenders, and the consequent need for agency expertise and administrative experience" normally "lead us to read [a] statute as delegating to the Agency considerable authority to fill in, through interpretation, matters of detail related to its administration." *Barnhart* v. *Walton*, 535 U. S. 212, 225 (2002). These considerations all favor such a reading here. Indeed, the question before us is one of agency administration in respect to detailed matters that an agency working with the statute is particularly likely

to understand.  In addition, the agency filled the gap here through the exercise of rulemaking authority explicitly given it by Congress to issue regulations "setting forth the standards for the showing of sufficient grounds to institute a review" and "establishing and governing inter partes review."  §§316(a)(2), (4); *Cuozzo*, 579 U. S., at ___–___ (slip op., at 12–13); cf. *Mead Corp.*, *supra,* at 227.  Thus, there is a gap, the agency possesses gap-filling authority, and it filled the gap with a regulation that, for reasons I have stated, is a reasonable exercise of that authority.

\*     \*     \*

I consequently would affirm the judgment of the Federal Circuit.  And, with respect, I dissent from the Court's contrary conclusion.