Concurring opinion filed by Circuit Judge Dyk.
Moore, Circuit Judge.
*1325 Mylan Pharmaceuticals, Inc., petitioned for inter partes review ("IPR") of various patents owned by Allergan, Inc., relating to its dry eye treatment Restasis. Teva Pharmaceuticals USA, Inc., and Akorn, Inc. (together with Mylan, "Appellees") joined. While IPR was pending, Allergan transferred title of the patents to the Saint Regis Mohawk Tribe, which asserted sovereign immunity. The Board denied the Tribe's motion to terminate on the basis of sovereign immunity and Allergan's motion to withdraw from the proceedings. Allergan and the Tribe appeal, arguing the Board improperly denied these motions. We affirm.
BACKGROUND
This appeal stems from a multifront dispute between Allergan and various generic drug manufacturers regarding patents related to Allergan's Restasis product (the "Restasis Patents"), a treatment for alleviating the symptoms of chronic dry eye. In 2015, Allergan sued Appellees in the Eastern District of Texas, alleging infringement of the Restasis Patents based on their filings of Abbreviated New Drug Applications. On June 3, 2016, Mylan petitioned for IPR of the Restasis Patents. Subsequently, Teva and Akorn filed similar petitions. The Board instituted IPR and scheduled a consolidated oral hearing for September 15, 2017.
Before the hearing, Allergan and the Tribe entered into an agreement Mylan alleges was intended to protect the patents from review. On September 8, 2017, a patent assignment transferring the Restasis patents from Allergan to the Tribe was recorded with the USPTO. The Tribe moved to terminate the IPRs, arguing it is entitled to assert tribal sovereign immunity, and Allergan moved to withdraw. The Board denied both motions.
Allergan and the Tribe appeal. We have jurisdiction pursuant 28 U.S.C. § 1295(a)(4)(A). Board decisions must be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.
ANALYSIS
As "domestic dependent nations," Indian tribes possess "inherent sovereign immunity," and suits against them are generally barred "absent a clear waiver by the tribe or congressional abrogation." Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla. , 498 U.S. 505, 509 (1991). This immunity derives from the common law, Santa Clara Pueblo v. Martinez , 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), and it does not extend to actions brought by the federal government, see, e.g. , E.E.O.C. v. Karuk Tribe Hous. Auth. , 260 F.3d 1071, 1075 (9th Cir. 2001) ; United States v. Red Lake Band of Chippewa Indians , 827 F.2d 380, 383 (8th Cir. 1987). Generally, immunity does not apply where the federal government acting through an agency engages in an investigative action or pursues an adjudicatory agency action. See, e.g. , Pauma v. NLRB , 888 F.3d 1066 (9th Cir. 2018) (holding the NLRB could adjudicate unfair labor charges brought by the Board against a tribally-owned business operating on tribal land); Karuk Tribe Hous. Auth. , 260 F.3d at 1074 (holding tribe not immune in EEOC enforcement action); cf.
*1326 Fed. Power Comm'n v. Tuscarora Indian Nation , 362 U.S. 99, 122, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960) (holding that tribal lands were subject to takings by the Federal Power Commission). There is not, however, a blanket rule that immunity does not apply in federal agency proceedings. Fed. Maritime Comm'n v. S.C. State Ports Auth. , 535 U.S. 743, 754-56, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) (" FMC ").
In FMC , the Supreme Court considered whether state sovereign immunity precluded the Federal Maritime Commission from "adjudicating a private party's complaint that a state-run port ha[d] violated the Shipping Act of 1984." Id. at 747, 122 S.Ct. 1864. In answering this question, the Court asked whether Commission adjudications "are the type of proceedings from which the Framers would have thought the States possessed immunity when they agreed to enter the Union." Id. at 756, 122 S.Ct. 1864. It decided they were, given the FMC proceedings' "overwhelming" similarities with civil litigation in federal courts. Id. at 759, 122 S.Ct. 1864. For example, the Court noted the procedural rules in the Commission's proceedings "bear a remarkably strong resemblance" to the rules applied in civil litigation, and the discovery procedures were "virtually indistinguishable" from the procedures used in civil litigation. Id. at 757-58, 122 S.Ct. 1864. The Court also distinguished the proceedings at issue from other proceedings in which the Commission had the authority to decide whether to proceed with an investigation or enforcement action. Id. at 768, 122 S.Ct. 1864. In doing so, the Court recognized a distinction between adjudicative proceedings brought against a state by a private party and agency-initiated enforcement proceedings.
The Tribe argues that tribal sovereign immunity applies in IPR under FMC . It asserts that like the proceeding in FMC , IPR is a contested, adjudicatory proceeding between private parties in which the petitioner, not the USPTO, defines the contours of the proceeding. Appellees dispute this comparison, arguing that the Tribe may not invoke sovereign immunity to block IPR proceedings because they are more like a traditional agency action. They argue the Board is not adjudicating claims between parties but instead is reconsidering a grant of a government franchise. They also argue that even if the Tribe could otherwise assert sovereign immunity, its use here is an impermissible attempt to "market an exception" from the law and non-Indian companies have no legitimate interest in renting tribal immunity to circumvent the law. Appellees further argue the Tribe may not assert immunity because the assignment was a sham, and the Tribe waived sovereign immunity by suing on the patents.
Although the precise contours of tribal sovereign immunity differ from those of state sovereign immunity, the FMC analysis is instructive. We hold that tribal sovereign immunity cannot be asserted in IPRs.
IPR is neither clearly a judicial proceeding instituted by a private party nor clearly an enforcement action brought by the federal government. It is a "hybrid proceeding" with "adjudicatory characteristics" similar to court proceedings, but in other respects it "is less like a judicial proceeding and more like a specialized agency proceeding." Cuozzo Speed Techs., LLC v. Lee , --- U.S. ----, 136 S.Ct. 2131, 2143-44, 195 L.Ed.2d 423 (2016). This tension was laid bare in two recent Supreme Court decisions decided on the same day.
In *1327 Oil States Energy Services v. Greene's Energy Group, LLC , --- U.S. ----, 138 S.Ct. 1365, 200 L.Ed.2d 671 (2018), the Court emphasized the government's central role in IPR and the role of the USPTO in protecting the public interest. It held that IPR is a matter "which arise[s] between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." 138 S.Ct. at 1373 (quoting Crowell v. Benson , 285 U.S. 22, 50, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ). It recognized that IPR is "simply a reconsideration of" the PTO's original grant of a public franchise, which serves to protect "the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope." Id. (quoting Cuozzo , 136 S.Ct. at 2144 ).
In contrast, in SAS Institute Inc. v. Iancu , --- U.S. ----, 138 S.Ct. 1348, 200 L.Ed.2d 695 (2018), the Court emphasized the adjudicatory aspects of IPR and the way in which it "mimics civil litigation." Id. at 1352 ; see also id. at 1353, 1355. It explained that Congress structured IPR so that the petitioner, not the USPTO Director, "define[s] the contours of the proceeding." Id. at 1355. The Court contrasted the "party-directed, adversarial" IPR process, in which the Director is only given the choice of whether to institute IPR, with the "inquisitorial approach" established by the ex parte reexamination statute, under which the Director was given the authority to investigate patentability on his own initiative. Id.
Ultimately, several factors convince us that IPR is more like an agency enforcement action than a civil suit brought by a private party, and we conclude that tribal immunity is not implicated. First, although the Director's discretion in how he conducts IPR is significantly constrained, he possesses broad discretion in deciding whether to institute review. Oil States , 138 S.Ct. at 1371. Although this is only one decision, it embraces the entirety of the proceeding. If the Director decides to institute, review occurs. If the Director decides not to institute, for whatever reason, there is no review. In making this decision, the Director has complete discretion to decide not to institute review. Oil States , 138 S.Ct. at 1371 ("The decision whether to institute inter partes review is committed to the Director's discretion."). The Director bears the political responsibility of determining which cases should proceed. While he has the authority not to institute review on the merits of the petition, he could deny review for other reasons such as administrative efficiency or based on a party's status as a sovereign. See Wi-Fi One, LLC v. Broadcom Corp. , 878 F.3d 1364, 1372 (Fed. Cir. 2018) (en banc). Therefore, if IPR proceeds on patents owned by a tribe, it is because a politically accountable, federal official has authorized the institution of that proceeding. See Alden v. Maine , 527 U.S. 706, 756, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (contrasting suits in which the United States "exercise[s] ... political responsibility for each suit prosecuted" in order to fulfill its obligation under the Take Care Clause with "a broad delegation to private persons to sue nonconsenting States"). In this way, IPR is more like cases in which an agency chooses whether to institute a proceeding on information supplied by a private party. In FMC , the Court recognized that immunity would not apply in such a proceeding. FMC , 535 U.S. at 768, 122 S.Ct. 1864.
In FMC , the Federal Maritime Commission lacked the "discretion to refuse to adjudicate complaints brought by private parties," FMC , 535 U.S. at 764, 122 S.Ct. 1864, and in federal civil litigation, a private *1328 party can compel a defendant's appearance in court and the court had no discretion to refuse to hear the suit. In both instances, absent immunity, a private party could unilaterally hale a sovereign before a tribunal, presenting an affront to the dignity of the sovereign. See Michigan v. Bay Mills Indian Cmty. , --- U.S. ----, 134 S.Ct. 2024, 2042, 188 L.Ed.2d 1071 (2014) (noting the need to consider the dignity of the Indian tribes as sovereigns); FMC , 535 U.S. at 760, 122 S.Ct. 1864 ("The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."). The Director's broad authority to not institute alleviates these concerns in the IPR context. It is the Director, the politically appointed executive branch official, not the private party, who ultimately decides whether to proceed against the sovereign.
Second, the role of the parties in IPR suggests immunity does not apply in these proceedings. Once IPR has been initiated, the Board may choose to continue review even if the petitioner chooses not to participate. 35 U.S.C. § 317(a). The Director has also been granted the right to participate in appeals "even if the private challengers drop out." Cuozzo , 136 S.Ct. at 2144 ; see also 35 U.S.C. § 143 (granting the Director the right to intervene in appeals of Board decisions in IPRs). The Board has construed its rules to allow it to continue review even in the absence of patent owner participation. See Reactive Surfaces Ltd. v. Toyota Motor Corp. , IPR2017-00572, Paper 32 (PTAB July 13, 2017) (citing 37 C.F.R. §§ 42.108(c), 120(a) ). This reinforces the view that IPR is an act by the agency in reconsidering its own grant of a public franchise.
Third, unlike FMC , the USPTO procedures in IPR do not mirror the Federal Rules of Civil Procedure. See FMC , 535 U.S. at 757-58, 122 S.Ct. 1864. Although there are certain similarities, the differences are substantial. While the Federal Rules of Civil Procedure provide opportunities for a plaintiff to make significant amendments to its complaint, see Fed. R. Civ. P. 15, the Board has determined that in IPR a petitioner may only make clerical or typographical corrections to its petition, see Nat'l Envtl. Prods. Ltd. v. Dri-Steem Corp. , IPR2014-01503, Paper 11 (PTAB Nov. 4, 2014) (citing 37 C.F.R. § 42.104(c) ). At the same time, a patent owner in IPR may seek to amend its patent claims during the proceedings, an option not available in civil litigation. 35 U.S.C. § 316(d). IPR also lacks many of the preliminary proceedings that exist in civil litigation. See, e.g. , Farmwald v. Parkervision, Inc. , IPR2014-00946, Paper 13 (PTAB Jan. 26, 2015) (declining to conduct a Markman hearing). Moreover, in civil litigation and the proceedings at issue in FMC , parties have a host of discovery options, including the use of interrogatories, depositions, production demands, and requests for admission. FMC , 535 U.S. at 758, 122 S.Ct. 1864. In IPR, discovery is limited to "(A) the deposition of witnesses submitting affidavits or declarations; and (B) what is otherwise necessary in the interest of justice." 35 U.S.C. § 316(a)(5) ; see also 37 C.F.R. § 42.51. In FMC , the Court rejected the idea that sovereign immunity could be circumvented by merely moving a proceeding from an Article III court to an equivalent agency tribunal. FMC , 535 U.S. at 760, 122 S.Ct. 1864. An IPR hearing is nothing like a district court patent trial. The hearings are short, and live testimony is rarely allowed. Ultratec, Inc. v. CaptionCall, LLC , 872 F.3d 1267, 1270 n.2 (Fed. Cir. 2017) ("Very seldom do IPR proceedings have the hallmarks of *1329 what is typically thought of as a trial."). In IPR, the agency proceedings are both functionally and procedurally different from district court litigation. In short, the agency procedures in FMC much more closely approximated a civil litigation than those in IPR.
Finally, while the USPTO has the authority to conduct reexamination proceedings that are more inquisitorial and less adjudicatory than IPR, this does not mean that IPR is thus necessarily a proceeding in which Congress contemplated tribal immunity to apply. The Tribe acknowledged that sovereign immunity would not apply in ex parte or inter partes reexamination proceedings because of their inquisitorial nature. Oral Arg. at 6:30-8:10. The mere existence of more inquisitorial proceedings in which immunity does not apply does not mean that immunity applies in a different type of proceeding before the same agency. Notably, the Supreme Court in Cuozzo recognized inter partes reexamination and IPR have the same "basic purposes, namely to reexamine an agency decision." 136 S.Ct. at 2144. While IPR presents a closer case for the application of tribal immunity than reexamination, we nonetheless conclude that tribal immunity does not extend to these administrative agency reconsideration decisions.
The Director's important role as a gatekeeper and the Board's authority to proceed in the absence of the parties convinces us that the USPTO is acting as the United States in its role as a superior sovereign to reconsider a prior administrative grant and protect the public interest in keeping patent monopolies "within their legitimate scope." See Cuozzo , 136 S.Ct. at 2144. The United States, through the Director, does "exercise ... political responsibility" over the decision to proceed with IPR. FMC , 535 U.S. at 764, 122 S.Ct. 1864 (quoting Alden , 527 U.S. at 756, 119 S.Ct. 2240 ). The Tribe may not rely on its immunity to bar such an action. See Miccosukee Tribe of Indians of Fla. v. United States , 698 F.3d 1326, 1331 (11th Cir. 2012) ("Indian tribes may not rely on tribal sovereign immunity to bar a suit by a superior sovereign."). Because we conclude that tribal sovereign immunity cannot be asserted in IPR, we need not reach the parties' other arguments.
In this case we are only deciding whether tribal immunity applies in IPR. While we recognize there are many parallels, we leave for another day the question of whether there is any reason to treat state sovereign immunity differently.
CONCLUSION
For the foregoing reasons, the decision of the Board is affirmed .
AFFIRMED